994 So.2d 1127 (2008)
Calvin MOORE, Appellant,
v.
The STATE of Florida, Appellee.
No. 3D05-2545.
District Court of Appeal of Florida, Third District.
January 2, 2008.
*1128 John H. Lipinski, for appellant.
Bill McCollum, Attorney General, and Linda S. Katz, Assistant Attorney General, for appellee.
Before COPE, GREEN, and SALTER, JJ.
SALTER, J.
Calvin Moore appeals his conviction and sentence for second degree murder. His points on appeal are directed to: (1) the trial court's denial of a defense request to admit certified copies of the murder victim's prior criminal convictions (though the parties read the jury a stipulation as to the nature of the offense and date of commission, as to each such conviction); (2) certain comments made by the State during closing argument; and (3) an alleged ambiguity in the imposition of sentence. Finding no error below on any of these points, we affirm.

Prior Convictions
Uncontroverted evidence at trial showed that, following an altercation with the victim, Moore retrieved a neighbor's handgun, pursued the unarmed victim, and shot him once in the head. The first gunshot caused the victim to fall to the ground, chest and face down. Moore then fired two more shots, "execution style," into the back of the victim's head, and the victim died at the scene.
The State's evidence included testimony by witnesses regarding statements made by the victim during the incidents. None of these statements related to the victim's prior crimes or convictions. Moore argues that subsection 90.806(1) of the Florida Statutes permitted him to attack the credibility of the declarant, here the victim, by introducing certified copies of the victim's prior convictions. The trial court refused admission of the certified copies based on the fact that, by stipulation, the jury was told the nature and date of each of the victim's offenses.
The trial court's ruling was not an abuse of discretion, Curry v. State, 839 So.2d 887, 888 (Fla. 3d DCA 2003), and any such purported error was in any event "harmless due to the overwhelming evidence of guilt." Cuervo v. State, 967 So.2d 155 (Fla.2007).

Closing Argument
During closing argument, the State asked rhetorically and repeatedly, as part of a summary of the incident and shooting, "What was Calvin [Moore] feeling?" Moore claims that this was (a) an impermissible commentary on Moore's silence or refusal to testify and (b) improper in light of the State's failure to move into evidence a statement made by Moore to investigators the day after the shooting.
Regarding Moore's feelings during the incidents, the State was required to prove, as a statutory element of second degree murder, that Moore's action "evinced a depraved mind regardless of human life," see § 782.04(2), Fla. Stat. (2005), by showing "ill will, hatred, spite, or evil intent." Turner v. State, 298 So.2d 559, 560 (Fla. 3d DCA 1974). The use of rhetorical questions during closing argument regarding the defendant's state of mind, in a case in which a particular state of mind must be *1129 proven, is not a prohibited commentary on a defendant's failure to testify. This is not a case similar to those cited by Moore, such as Watts v. State, 921 So.2d 722, 724 (Fla. 4th DCA 2006), in which the State asks the rhetorical question, "did you hear anybody else testify to dispute the officer's testimony?," but only the defendant and the officer were present during the key incident.
Similarly, the State's use of such questions during closing argument is not inconsistent with a decision not to introduce portions of Moore's voluntary statement the day after the shooting. The trial court correctly denied a motion for mistrial on this point. The State urged the jury to consider the defendant's state of mind during the incidents preceding the shooting based on the testimony of several witnesses regarding Moore's actions. Moore's voluntary statement, on the other hand, was his own self-serving account, and the State was under no obligation to introduce it or refer to it.

Sentencing
The trial court did not simply announce a sentence after presentations by the victim's father, Moore's family, and counsel. The trial court prefaced that sentence with comments describing the matter as an "extremely difficult case." What made it difficult was that Moore, "other than this one instance, led a remarkable life, a very productive life ...," the court noted. The trial court then described the countervailing circumstances of the day of the murderthe retrieval of the gun from Moore's truck, the firing of the first shot, and the "two bullets to the back of the head that followed."
The trial court then weighed the mitigating factors in Moore's background against those last two gunshots, "the act of an assassin." The court worried out loud that if the court imposed any sentence less than life, Moore could come out of prison, and "society must be shielded from a person who can snap and put three bullets in a person's head, the father of the kids he was taking care of." Because of that risk, "and with my interest in making sure that never happens," the trial court then unequivocally sentenced Moore "to his natural life in prison." The sentence as then recorded on the official written judgment was "life."
Ambiguity cannot be manufactured by simply considering the preliminary (and principled) articulation and balancing of the alternatives by the court. The "bottom line," the actual product of that balancing process, was clearly and concisely stated by the court. This is not a case, as in State v. Carr, 544 So.2d 192 (Fla.1989), in which the terms of the actual sentence imposed are subject to conflicting interpretations.
Affirmed.